**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                :
ABDUL BATIN GRIGGS,             :
                                :     Civil Action No.
            Plaintiff,          :     11-2673 (SRC)
                                :
       v.                       :     **MEMORANDUM OPINION**
                                :
STATE OF NEW JERSEY et al.,     :
                                :
            Defendants.         :
_____:


**Chesler**, District Judge:

    Plaintiff, an inmate confined at the East Jersey State Prison, Rahway, New Jersey, seeks to bring this action in forma pauperis, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals, within the meaning of 28 U.S.C. § 1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis, pursuant to 28 U.S.C. § 1915(a), and will order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   **BACKGROUND**

Plaintiff named the following individuals and entities as Defendants in this action: (a) the State of New Jersey; (b) Union and Essex Counties; (c) Department of Corrections; and (d) John Does and Jane Does, 1 to 5 each.  See Docket Entry No. 1, at 1.

Plaintiff asserts that he had a daughter who was diagnosed, at the age of five, with brain cancer.[1]  See Docket Entry No. 1-1, at 4.  According to the Complaint, Plaintiff's daughter's health had a temporary improvement but, on May 1, 2008, she passed away.  See id.

Plaintiff asserts that, in August 2006, he was arrested on murder charges and placed in the Union County Jail during the pendency of his criminal prosecution.[2]  See id.  Plaintiff also asserts that he was transferred to another jail, namely, the Essex County Jail, in January 2008.  See id.  When, upon his transfer, Plaintiff allegedly contacted his child's mother, Plaintiff's child's mother allegedly informed him that the daughter's health took a turn for the worse and she was at the final stages of her

---

[1] It appears that Plaintiff neither married the mother of his child nor lived with the child and her mother.  See generally, Docket Entry No. 1-1.

[2] According to the New Jersey Department of Corrections, Plaintiff had a bribery conviction rendered in November 2008 and, in November 2010, was convicted on a panoply of other charges that included murder, conspiracy and firearm and weapon offenses. See <<https://www6.state.nj.us/DOC_Inmate/details?x=1032566&n=0>>.  He is serving a life sentence.  See id.

cancer.  See id.  Plaintiff seemingly maintains that he was either requesting a furlough to visit his daughter or sought to have himself escorted to his daughter's location at that time (which, seemingly, was the Children's Hospital in New Brunswick), or – in alternative – requested that his daughter, who was at that time at the final stages of brain cancer and paralyzed – would be allowed to visit him at the jail.  See id. at 4-5.  Plaintiff alleges that his requests were denied, and – after his daughter died – he was denied furlough to attend his daughter's funeral.  See id. at 5.  Finally, Plaintiff asserts that certain personal mail was not forwarded to Plaintiff after his transfer from the Union County Jail to the Essex County Jail.  See id.  Plaintiff seeks $1 million in compensatory damages and $1 million in punitive damages.

## II.  STANDARD OF REVIEW

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  Indeed, it is long established that a court should "accept as true all of the [factual] allegations in the  complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  However, while a court will

accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

Addressing the clarifications as to the litigant's pleading requirement stated in the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the courts in this Circuit with detailed and careful guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  Specifically, the Court of Appeals observed as follows:

> "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."  Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  Id. at 1966.  [Hence] "factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965 & n.3. . . . [Indeed, it is not] sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct."  Id.

Id. at 230-34 (original brackets removed).

This pleading standard was further refined by the United

States Supreme Court in its recent decision Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009):

> [In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  Id. at 557. . . . A claim has facial plausibility [only] when the plaintiff pleads factual content . . . .  Id. at 556. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets omitted). [A fortiori,] the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [,i.e., by] legal conclusion[s] couched as a factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." . . . . [W]e do not reject these bald allegations on the ground that they are unrealistic or nonsensical. . . .  It is the conclusory nature of [these] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings does not turn . . . the discovery process.  Twombly, 550 U.S.] at 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint alleges any of the elements] "generally," [i.e., as] a conclusory allegation [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of action [and] affix[ing] the label "general allegation" [in hope to develop facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.

**III. SECTION 1983 ACTIONS**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**IV. DISCUSSION**

    **A.   CLAIMS AGAINST THE STATE AND DOC**

Here, Plaintiff named as Defendants in this action, the State of New Jersey and the Department of Corrections. However, under the Eleventh Amendment, the State of New Jersey is immune from suit for damages. See Hyatt v. County of Passaic, 340 F. App'x 833, 836 (3d Cir. 2009) ("Under the Eleventh Amendment, 'an unconsenting State is immune from suits brought in federal courts by her own citizens'"). Moreover, the Department of Corrections is not an

entity cognizable as a "person" for the purposes of a § 1983 suit. See Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989); Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); see also Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994).  Therefore, Plaintiff's allegations against these Defendants must be dismissed.

### B.    CLAIMS AGAINST THE COUNTIES

Plaintiff named as Defendants Union County and Essex County. While a municipal or local government entity such as a county is considered a "person" within the meaning of 42 U.S.C. § 1983, § 1983 claims against a municipal entity are subject to dismissal in the event they are based solely on a theory of respondeat superior liability.  See Monell v. New York City Dep't of Soc. Svcs., 436 U.S. 658, 690-91(1978); see also Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a supervising entity – even if it is operating under contract with the state – cannot be held liable for the acts of its employees and agents under those theories). Instead, municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [complained-of]injury." Monell, 436 U.S. at 694.  Plaintiff's claim against Defendants Union County and Essex

County fails on its face for lack of any allegation that he was harmed as a result of a policy or custom of either municipal entity. Plaintiff appears to have named these entities as Defendants simply because the jail facilities where Plaintiff was housed were located in the geographic borders of these counties. Accordingly, the Court will dismiss Plaintiff's § 1983 claim against Union County and Essex County.

**C.    SUBSTANTIVE DEFICIENCY OF PLAINTIFF'S CLAIMS**

Even if the Court were to ignore Plaintiff's failure to specify the identity of these John and Jane Does and their personal involvement in the events alleged in the Complaint, Plaintiff's allegations are subject to dismissal for failure to state a claim upon which relief can be granted.

To the degree Plaintiff was aiming to state a claim on the grounds of his transfer to the Essex County Jail from the Union County Jail, Plaintiff's allegations are facially deficient because he had no due process rights in being confined at a particular facility or in being saved from transfers from one facility to another. See D'Amario v. Zenk, 131 Fed. App'x 381, 382-83 (3d Cir. 2005) (where the Court of Appeals summarily affirmed the district court's finding that the prisoner "could show no entitlement to be housed in the facility of his choice" and that such a determination was entirely within the discretion of the department of corrections).

To the degree Plaintiff wished to assert claims based on undue denial of furlough to visit his daughter during the latest stages of her illness or to attend her funeral, Plaintiff had no due process right in such visits or such furlough. See <u>Fisher v. McBride</u>, 2007 U.S. Dist. LEXIS 2781 (D. Del. Jan. 12, 2007) (inmates have no constitutional right to a funeral furlough); <u>Hipes v. Braxton</u>, 878 F. Supp. 56 (W.D. Va. 1995); <u>see</u> <u>also</u> <u>Hackett v. Nichols</u>, Civil Action No. 03-1813 (JMM), Docket Entry No. 9 (Oct. 24, 2003) (M.D. Pa.) (denial of furlough to attend funeral does not implicate a federal right).

Finally, to the degree Plaintiff wished to assert a claim based on the jail officials' decision refusing to allow his paralyzed, near-death daughter to visit him, Plaintiff's claim also fails since Plaintiff had no absolute constitutional right to visitation. "In the First Amendment context, [an] inmate retains those First Amendment rights [of freedom of speech and association] that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974) (evaluating constitutionality of limiting one channel of communication with those outside of prison through review of adequacy of alternative channels of communication); <u>see</u> <u>also</u> <u>Thornburgh v. Abbott</u>, 490 U.S. 401 (1989) (evaluating regulations governing receipt of subscription publications by federal prison inmates); <u>cf.</u> <u>Kentucky</u>

Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989) (there is no due process right to "unfettered visitation"); Neumeyer v. Beard, 301 F. Supp. 2d 349, 351 (M.D. Pa. 2004), aff'd, 421 F.3d 210 (3d Cir. 2005) (inmates and their families and spouses have no "constitutional right to visitation" other than with legal counsel); Young v. Vaughn, 2000 U.S. Dist. LEXIS 10667, 2000 WL 1056444 (E.D. Pa. July, 31, 2000) (same); Flanagan v. Shively, 783 F. Supp. 922, 934 (M.D. Pa. 1992) ("Inmates have no constitutional right to visitation.  Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion"), aff'd, 980 F.2d 722 (3d Cir. 1992), cert. denied, 510 U.S. 829 (1993).

Therefore, all of Plaintiff's aforesaid claims are subject to dismissal.

### D. UNTIMELINESS OF PLAINTIFF'S CLAIMS

The foregoing analysis leaves the Court only with Plaintiff's claims asserting that certain personal mail was not forwarded to Plaintiff.  Although Plaintiff does not expressly assert that he was prevented from all means of communication with his daughter (since Plaintiff's letters, apparently, could be freely mailed *to* his daughter and, thus, could have been read by or to her), this Court cannot exclude the possibility that Plaintiff wished to assert that all his communications with his daughter were de facto cut off because all *her* letters to him were not delivered (that is,

if this Court is to hypothesize that she was able to write or dictate such letters during the last months of her fight with her brain cancer). Therefore, such claim could, substantively, be cured by a re-pleading of facts showing a full cut-off in communication.

However, here, *all* of Plaintiff's claims, *including his claim based on the failure to forward him his personal mail*, are facially untimely since: (a) Plaintiff asserts that his daughter passed away on May 1, 2008; but (b) Plaintiff's Complaint was executed almost three years later, that is, on April 6, 2011.[3]

The statute of limitations on civil rights claims is governed by New Jersey's two-year limitations period for personal injury. See Goodman v. Lukens Steel Co., 482 U.S. 656, 661-62 (1987); Wilson v. Garcia, 471 U.S. 261, 276 (1985); O'Connor v. City of Newark, 2006 WL 590357 *1 (3d Cir. March 13, 2006); Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). New Jersey's statute of limitations for personal injury claims requires that "an action for an injury to the person caused by a wrongful act, neglect, or default, must be convened within two years of

---

[3] The Complaint was received on May 11, 2011, that is, more than a month after it was executed. However, reading all facts in the light most favorable to Plaintiff, the Court presumes that Plaintiff handed his Complaint to his prison officials for mailing to the Court on the date of its execution , i.e., on April 6, 2011.

accrual of the cause of action." Cito, 892 F.2d at 25 (quoting Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987)). Under federal law governing the accrual of claims, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Montgomery, 159 F.3d at 126 (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)); see also Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998). "Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed." Oshiver v. Levin, 38 F.3d 1380, 1387 (3d Cir. 1994). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 125 S.Ct. 1807, 1814 (2005). The Third Circuit instructs that equitable tolling is appropriate when "the principles of equity would make the rigid application of a limitation period unfair, such as when a [plaintiff] faces extraordinary circumstances that prevent him from filing a timely [complaint] and the [plaintiff] has exercised reasonable diligence in attempting to investigate and bring his claims." LaCava v. Kyler, 398 F.3d 271, 275-276 (3d Cir. 2005). Mere excusable neglect is not sufficient. Id.; Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Miller v. N.J. State Dep't of

Page -12-

Corr., 145 F.3d 616, 618-19 (3d Cir. 1998); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).  Extraordinary circumstances have been found where (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim, see Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005).

Here, Plaintiff's daughter died three years prior to his execution of the Complaint, which necessarily indicates that all letters from her were necessarily sent prior to the date of her death.  Therefore, all Plaintiff's claims based on the alleged non-receipt of these letters (as well as all of Plaintiff's above-discussed other claims associated with the death of his daughter) became time barred, at the latest, two years after her death, that is, on May 1, 2010.  Correspondingly, all of Plaintiff's challenges associated with his daughter's illness and death are facially untimely.

Moreover, since the Complaint indicates that Plaintiff went on to litigate his criminal conviction in 2010, it is self-evident that he had ample opportunity to litigate his claims raised in the instant Complaint when these challenges were still timely.  Thus, it is apparent that considerations of equitable tolling are

inapplicable to the case at bar and *all* Plaintiff's challenges should be dismissed.

**V.    CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiff in forma pauperis status and direct the Clerk to file the Complaint.

The Complaint will be dismissed, and no leave to file an amended complaint will issue.

An appropriate order accompanies this Opinion.


                                    s/ Stanley R. Chesler
                               **Stanley R. Chesler**
                               **United States District Judge**


Dated: August 24, 2011